### FRIES et al. v. MERCK et al.

(Supreme Court, Appellate Division, First Department. November 24, 1899.)

CONTRACTS—CONSTRUCTION—RIGHT TO RECOVER.

Plaintiffs and defendants, competitors in selling saccharine, entered into a contract whereby plaintiffs became sales agents for defendants' article, on which the latter held letters patent, and were to receive 50 cents on each pound sold and delivered by defendants, until said letters patent should expire; and should they be infringed on, or should defendants for any other reason lose exclusive control of the market, they should have the right to terminate the contract, but the same in all respects should be again enforced on defendants' being reinstated in such exclusive control during the unexpired term of said letters patent. Defendants lost exclusive control of the market for a time, and during such period sold a number of pounds of saccharine, the greater portion of which was not delivered until they had been reinstated in exclusive control. *Held*, that plaintiffs were not entitled to recover on the saccharine sold while the contract was suspended, but not delivered until after it had again come into effect.

Appeal from judgment on report of referee.

Action by Albert Fries and Harold H. Fries against George Merck and Theodore Weicker on a contract. There was a judgment for plaintiffs, and defendants appeal. Reversed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, PATTERSON, and O'BRIEN, JJ.

Alfred Jaretski, for appellants.
I. Albert Englehart, for respondents.

BARRETT, J. The plaintiffs and the defendants, competitors in the business of selling saccharine, entered into a contract on the 1st day of May, 1896, whereby the plaintiffs became sales agents for the defendants' article, upon which the latter held letters patent; and the defendants agreed to pay them 50 cents upon each pound of saccharine which might be "sold and delivered" by the defendants, either to the plaintiffs or to any other person, "until said letters patent shall expire, or as long as this contract remains in force, as hereinafter provided." The contract contained this provision:

"Should said letters patent, however, in the meantime be infringed upon by any person or firm, or should the market of the United States for any other reason be no longer under the exclusive control and in the absolute possession of the parties of the first part [the defendants], without their fault, connivance, act of commission or omission, then the parties of the first part shall have the right to terminate this agreement on five days' written notice, but the same in all respects shall be again enforced upon the parties of the first part being reinstated in their rights and restored to such exclusive control during the legally unexpired term of said letters patent."

Because of an infringement and consequent cessation of the defendants' absolute control of the market, the contract was suspended from August 1 to September 26, 1897. During this period the defendants sold over 3,500 pounds of saccharine, the greater part of which, however, was not delivered to the purchasers until after September 26th. The judgment awards to the plaintiffs 50 cents upon each pound of saccharine delivered subsequent to Sep-

tember 26th, although the contract of sale was made between that date and August 1st; and the sole question is whether this was correct.

The defendants bound themselves to pay the plaintiffs 50 cents upon each pound of saccharine "sold and delivered" while the contract was in force. The plaintiffs contend that a "sale" is not complete until title passes by delivery; and hence that, in the eye of the law, the "sale," in the present case, as well as the delivery, took place after the contract was resumed. But this argument completely ignores the original transaction, which resulted in the subsequent delivery of the goods. It assumes that the word "sold," as used in the contract, referred exclusively to an executed, and not to an executory, sale. This construction is neither within the letter nor the spirit of the contract. The instrument, read in the light of the surroundings, shows that there was no intention to compel the defendants to make the specified payments upon goods, the agreement to sell which was made while the contract was in suspense. The substance of the arrangement was that the defendants agreed to make the payments only while they remained in exclusive control of the market. Such control would naturally enhance prices, and its continuous existence was the postulate upon which the bargain and liability thereunder rested. The price which would justify the bonus paid to the plaintiffs depended, of course, upon this exclusive control of the market. The moment that exclusive control ceased or was suspended, the price would naturally drop, and there would no longer be a suitable basis for the bonus. As matter of fact, the defendants, as was to be expected, were forced to lower their prices between August 1st and September 26th; and the goods in question, though delivered after September 26th, were contracted for at the lower rates during the period of suspension. Clearly, no payment of the bonus in such case was contemplated. With what grace could the defendants have refused to pay the plaintiffs upon goods contracted to be sold prior to August 1st (when they had complete control of the market, and higher prices were consequently obtainable), merely because such goods were not delivered under the contract until the period of suspension? The defendants, under such circumstances, would not have been heard to say that the sale was only executed upon delivery, nor would they have been heard to say that, because of the use of the words "sold and delivered," the contract and delivery must both be within the period when the bargain was in force. The essential bargain was that, when the defendants made an agreement to sell during the running life of the contract, they were, upon delivery and payment (at any period), to give the plaintiffs the agreed bonus. But they were not bound to do so when the agreement of sale was made during the suspension of the contract, although delivery and payment might be made after the resumption of the arrangement.

The judgment should be reversed, with costs, and, as the facts are conceded and cannot possibly be varied upon a new trial, the complaint should be dismissed, with costs. All concur.